**ATLANTIC COAST LINE R. CO. v. SIMMS.**

**No. 11677.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 14, 1946.

Charles Cook Howell, of Jacksonville, Fla., and G. L. Reeves, of Tampa, Fla., for appellant.

Will O. Murrell, of Jacksonville, Fla., for appellee.

Before SIBLEY, HUTCHESON, and WALLER, Circuit Judges.

WALLER, Circuit Judge.

Appellee, while working for appellant as a fireman on a 75-ton capacity wrecker which was engaged in undertaking to raise one end of a 122-ton locomotive out of a turntable pit, was injured when the wrecker overturned into the turntable pit.

He recovered judgment in the Court below on evidence in his behalf that showed, or tended to show:

(1) That the wrecker should not have been placed on the turntable but should have been stationed on tracks, supported by solid earth.

(2) That the rail clamps attached to the wrecker should have been fastened to the rails beneath the wrecker.

(3) That the wrecker was too small and inadequate for the task assigned to it.

(4) That the center outrigger on the wrecker should have been used to take a part of the stress or load off the outrigger that broke and allowed the wrecker to turn over into the pit.

(5) That certain parties had warned the foreman of the dangerous condition caused by attempting to pick up the locomotive from the turntable under the circumstances.

(6) That the wrecker had been in use since 1906, and that the same outrigger had broken and been welded in 1924.

(7) That the locomotive was pulled so high that the wheels of the wrecker on the off side left the rail.

The defendant's evidence showed, or tended to show:

(1) That the wrecker turned over when the outrigger next to the locomotive broke and that this was the proximate cause of the injury.

(2) That the outrigger broke because of a latent defect which careful and recent inspections did not, and could not, reveal.

(3) That the wrecker, although old, was sound and in good repair.

(4) That even though the wrecker was only of 75-ton capacity, and the locomotive weighed 122 tons, nevertheless it was not necessary to lift the entire locomotive but only the end which had dropped over into the pit, and that the wrecker had successfully raised the end of the locomotive several feet before the rigger broke.

(5) That the rail clamps were fastened seasonably and if they had come unfastened it was immaterial to the issues because they were not intended to prevent the wrecker from overturning but to hold the wheels in line with the track.

(6) That the wrecker's capacity was not overtaxed.

(7) That the center outrigger was not needed.

(8) That the wrecker could not get an efficient hold on the fallen end of the locomotive except from a position on the turntable and that sufficient cribbing had been placed under the turntable, and under the locomotive as it was raised, to support the operation.

At each corner of the wrecker there was a large metal foot called an outrigger, whose function was to give support and sturdiness to the wrecker at the point or points where the weight was chiefly localized. The boom on the wrecker was operating off its southeast corner, that is, the southeast corner of the wrecker was nearest the locomotive and was the fulcrum of the lifting process. It was the outrigger at the southeast corner of the boom that was down and in place and that broke, allowing the wrecker to overturn. It was this outrigger that a witness testified had been welded in 1924.

The plaintiff also showed that there was another outrigger, or heavy steel beam, in the center of the side of the wrecker next to the locomotive, which center beam, or outrigger, could have been put in place to support the wrecker, but that it was not so used. It is contended that if this center outrigger had been in place it would have taken some of the strain and would also have prevented, or would have aided in preventing, the wrecker from overturning.

At each corner of the wrecker there are also rather heavy and strong, tonglike appendages called "rail clamps", which were designed and intended to be fastened to the rail beneath the wrecker. There is a divergence of views as to the function and efficacy of these clamps, but the inference is allowable that each had the function of aiding to some extent in holding the wrecker to its place on the rails. There is testimony, also, that the clamps were unfastened at the time of the accident. What effect these clamps would have had in tending to prevent the overturning of the wrecker; what the effect would have been of the failure of the defendant to use the center outrigger in supporting the operation of the wrecker; whether or not it was a want of due care in the circumstances for the foreman of the operation to disregard the warning of parties as to the precarious condition of the operation; whether or not it was negligence to undertake to pick up the locomotive from the turntable; whether or not it was negligence to use a wrecker of the size, type, and age of the wrecker in question for the work involved; were all questions of fact about which the minds of reasonable men might differ, and there was no error in submitting the case to the jury.

We think that the lower Court fully, fairly, and correctly charged the jury and that no reversible error was committed in the making of the charge or in the refusal of the charges requested.

The judgment of the Court is

Affirmed.